*In re* CLOSURE OF JURY VOIR DIRE

(PEOPLE v LAWRENCE)

Docket No. 156557. Submitted January 4, 1994, at Grand Rapids. Decided April 18, 1994, at 9:40 A.M.

Booth Newspapers moved to intervene in the criminal trial of Stephen Lawrence in the Barry Circuit Court and to quash an order by the court to close jury voir dire to the public and the press. The court, Richard M. Shuster, J., granted the motion for intervention, but denied the motion to quash, stating that closure was necessary to accommodate 150 prospective jurors in a courtroom that normally has seating for 131 persons and to prevent mingling between journalists and prospective jurors. Booth appealed by leave granted.

The Court of Appeals *held:*

1. A First Amendment right of access applies to criminal trials, including jury voir dire proceedings. The right may be circumscribed only by an overriding interest based on findings that closure is essential to preserve higher values such as the prevention of the disclosure of sensitive information and closure is narrowly tailored to serve that interest. Although the size of a courtroom may justify limiting admission, the closure order in this case was not narrowly tailored in view of a number of measures that could have been taken to accommodate the press and still address the concerns raised by the trial court.

2. Reversal of the defendant's conviction is not warranted. The trial itself was open to the public and the press, and the defendant did not object to the closure of the voir dire proceeding.

Closure order reversed.

TRIAL — CRIMINAL TRIALS — JURY VOIR DIRE — CLOSURE.

A right of access under the First Amendment applies to the jury voir dire proceedings of a criminal trial; the right may be circumscribed only by an overriding interest based on findings

REFERENCES

Am Jur 2d, Criminal Law §§ 636, 998, 1000; Jury § 196.
See ALR Index under Criminal Procedure Rules; Voir Dire.

that closure is essential to preserve higher values and is narrowly tailored to serve that interest.

*Miller, Johnson, Snell & Cummiskey* (by *James S. Brady* and *Stephen R. Ryan*), for Booth Newspapers.

Before: SAWYER, P.J., and NEFF and M. J. TALBOT,* JJ.

NEFF, J. Intervenor Booth Newspapers, doing business as The Grand Rapids Press, appeals by leave granted from a circuit court order that barred the public and the press from attending jury voir dire in the underlying criminal case. We reverse that order.

I

One week before trial, the trial judge in the underlying criminal case notified the parties' attorneys and the circuit court administrator that he intended to close jury selection to the press and the public. On the morning of jury selection, a sign was posted on the courtroom door stating that only jurors would be allowed in the courtroom and that the courtroom would be open to the public following jury selection.

Booth quickly moved to intervene and to quash the closure order. Both defense counsel and the prosecutor deferred to the court with regard to the closure issue. The court granted the motion to intervene, but denied Booth's motion to quash. The court stated the following regarding the closure order:

This courtroom seats 131 people. We have a case here that we felt necessitated bringing in over 150

* Circuit judge, sitting on the Court of Appeals by assignment.

jurors. That meant that we had to bring in extra seats, some 20 extra seats, which we did. We filled every available space here in this courtroom. I am not willing to put additional people on this side of the bar in a case of this nature, and I was not willing to have anybody else, general public, press or otherwise, seated out in the audience portion. We simply were filled absolutely to capacity.

Booth argued that the court erred by not holding a hearing before closing the proceedings and that it did not narrowly tailor the order because not even one reporter was allowed in the courtroom during jury selection, despite the fact that the hearing on the motion was held after a morning session in which sixteen prospective jurors were dismissed. The court noted that there was a portion of the courtroom in which plaster was falling from the ceiling, and, so, no one could sit there. The court reiterated that it did not want a reporter taking notes mingling with the pool of jurors. After jury selection, the court opened the proceedings to the press and the public.

II

Although it appears that Booth's appeal is moot, we will review the issue raised because it is one of public significance and is likely to recur in the future yet evade appellate review. *In re Closure of Preliminary Examination,* 200 Mich App 566, 568; 505 NW2d 24 (1993).

A

A First Amendment right of access applies to criminal trials, including jury voir dire proceedings. *Richmond Newspapers, Inc v Virginia,* 448 US 555; 100 S Ct 2814; 65 L Ed 2d 973 (1980);

*Press-Enterprise Co v Superior Court,* 464 US 501; 104 S Ct 819; 78 L Ed 2d 629 (1984). In *Press-Enterprise,* the Court said that the presumption of open criminal trials can be overcome only by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.,* p 510. That is the test to be applied where the state attempts to deny the right of access in order to inhibit the disclosure of sensitive information. *Globe Newspaper Co v Superior Court,* 457 US 596; 102 S Ct 2613; 73 L Ed 2d 248 (1982).

**B**

In the present case, access was denied for a reason not related to disclosure of sensitive information. The reason given by the trial court was simply lack of space. Our Supreme Court has observed that the size of the courtroom may justifiably limit attendance. *Detroit Free Press v Recorder's Court Judge,* 409 Mich 364, 386-387; 294 NW2d 827 (1980). However, even where the reason offered is space limitations, the court must still narrowly tailor the closure order. *In re Times-World Corp,* 7 Va App 317, 327; 373 SE2d 474 (1988).

The court in this case did not narrowly tailor the order. The concern over lack of space did not necessarily mandate closing the entire proceeding to all members of the press. Because there were not enough permanent seats in the courtroom, the court brought in twenty additional chairs to accommodate the prospective jurors. It seems that space for a limited number of journalists, or at least one, could also have been found. The court's concern regarding the reporters mingling with the prospective jurors could have been addressed by an

order requiring the reporters to be segregated from the prospective jurors or by informing the prospective jurors about the presence of the journalists and warning both prospective jurors and journalists not to talk about the case. Further, the court gave no reason why every member of the jury pool had to be in the courtroom at one time. The court apparently did not even consider keeping some of the prospective jurors in jury rooms or other parts of the courthouse until it was determined that they were needed in the courtroom.

It is clear that any number of simple solutions might have been considered to accommodate the legitimate concerns of the press with regard to the right of access to the jury selection process. Because the trial court's closure order did not evidence an attempt to do so, and was not narrowly tailored to the particular circumstances of the case, we reverse it.

III

Regarding Booth's contention that it should have been notified before the closure order was issued, we find no support for the proposition that a preclosure hearing was required on the facts of this case. We find that the trial court properly held the hearing on the motion as soon as briefs were filed.

We also reject Booth's request for reversal of defendant's conviction where the trial itself was open to the public and defendant made no objection to the closure of the voir dire proceedings. *In re Closure of Preliminary Examination, supra,* pp 570-571.

Reversed with regard to the closure order only.